IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION

FILED

September 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9608-CR-00319 |
| | ) | |
| | ) | Polk County |
| v. | ) | |
| | ) | Honorable Mayo L. Mashburn, Judge |
| | ) | |
| BOBBY JOE RUSSELL, | ) | (Reckless homicide and possession of firearm |
| | ) | where alcoholic beverages are served) |
| Appellant. | ) | |

For the Appellant:

G. Scott Kanavos
166 North Ocoee Street
P.O. Box 42
Cleveland, TN 37364-0042

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Michael J. Fahey, II
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

Jerry N. Estes
District Attorney General
203 E. Madison Ave.
P.O. Box 647
Athens, TN 37303-0647

Joe Rehyansky
Assistant District Attorney General
P.O. Box 1351
Cleveland, TN 37364-1351

OPINION FILED:_____


CONVICTIONS AFFIRMED; SENTENCES MODIFIED TO CONCURRENT
SENTENCES

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Bobby Joe Russell, appeals as of right from his convictions by a jury in the Polk County Criminal Court for reckless homicide, a Class D felony, and possession of a firearm where alcoholic beverages are served, a Class A misdemeanor.  For the reckless homicide, the defendant received a four-year sentence as a Range I, standard offender to be served in the custody of the Department of Correction and was fined five thousand dollars.  For the possession of a firearm, he received a consecutive sentence of eleven months and twenty-nine days to be served in the county jail and was fined two thousand five hundred dollars.  The defendant presents the following issues for review:

> (1)  whether the evidence was sufficient to support his convictions;

> (2) whether the trial court imposed excessive sentences.

We hold that there is sufficient evidence to support the defendant's convictions.  We affirm the length of the sentence and the denial of alternative sentencing but reverse the consecutive sentencing.

This case involves the shooting death of Billy Redden outside an establishment known as Jake's Place.  At the trial, Teresa Delk, a waitress at Jake's Place, testified that the victim and his friends, Scott Gilbert and Billy Simms, were present at Jake's Place on the evening of September 30, 1994, drinking beer and shooting pool.  Ms. Delk said that she saw the defendant, his wife, and Tim Sherra that same evening.  Ms. Delk testified that several customers went outside to arm wrestle and that she went outside to retrieve the customers to prevent any of them from violating the law by taking beer off the premises.  Ms. Delk stated that she saw the defendant and the victim preparing to arm wrestle.  She said that the victim punched the defendant, breaking the defendant's glasses and cutting his face, and that the defendant and the victim began shoving each other.  Ms. Delk said that the defendant

2

pulled a gun from his pocket and shot the victim. She also testified that none of the victim's friends made any effort to get involved in the altercation.

Mr. Sims testified that he was outside the bar when the altercation occurred. He stated that the victim and the defendant prepared to arm wrestle but they never could get a good hold on each other. He stated that the victim said "F--- it," in response to this problem and that the defendant replied by pushing the victim. The victim then punched the defendant, opening a cut under the defendant's left eye. He said that the defendant then said "F--- this," and shot the victim. According to Mr. Sims, the defendant did not hesitate when he shot the victim. Mr. Sims also testified that the victim never attempted to punch the defendant a second time. Mr. Sims recalled that after the shooting, the defendant shouted, "Let's go, let's go," and then left with his wife and Mr. Sherra.

Mr. Gilbert testified that the defendant and the victim were preparing to arm wrestle when the defendant called the victim a bad name and pushed the victim. He said that the victim punched the defendant, knocking the defendant a few steps back. He stated that the defendant pulled a gun out of his pocket, stated "F--- this," shot the victim, and then told his wife to get him out of there. Mr. Gilbert testified that the victim did not try to hit the defendant a second time and that the defendant did not hesitate before shooting. He also stated that he and Mr. Sims did not try to get involved. Mr. Gilbert testified that the victim never carried a weapon and did not possess a weapon on the night of the altercation. He acknowledged that he and the victim were drinking on the night of the killing.

Dennis Waters, the chief of police of the Benton Police Department, testified that he lived across the street from Jake's Place and that he came to the bar after hearing a gunshot. Mr. Waters also testified that he could not find the victim's

3

pulse upon discovering the victim, and did not believe the victim was breathing upon his arrival. He said that there were no weapons around the victim's body.

Dennis Davis, lieutenant with the Bradley County Sheriff's Department, testified that he located the defendant in his truck in the parking lot of a motorcycle shop. He testified that the defendant's face was bleeding and that he was holding a rag to his face to stop the bleeding. Mr. Davis also testified that two firearms were in the defendant's truck, a .44 caliber handgun and a small single-action, American Arms .22 derringer.

Andy Shelfer, a member of the Polk County Sheriff's Department, testified that he examined the derringer and found that one round had been fired. He also testified that the weapon smelled like it had been recently fired. Mr. Shelfer stated that a derringer must be cocked before it can be fired.

Dr. Charles Harlan testified that the cause of the victim's death was a gunshot wound resulting from a .22 caliber hollow-point bullet fired three to six inches from the victim, entering the upper left side of the victim's chest and striking the victim's heart. In Dr. Harlan's opinion, the victim was either leaning forward when he was shot or the defendant was holding the gun above the victim shooting down at him. He also testified that the blood alcohol level of the victim was .13.

Leeann Russell, the defendant's wife, testified that the defendant and the victim broke apart before they arm wrestled, because the defendant refused to bet on the arm wrestling match. Mrs. Russell said that the victim punched the defendant twice. She explained that the defendant's vision in his left eye is much weaker than the vision in his right eye and that the right eye had swollen shut after the second punch. She also said that Mr. Gilbert followed the defendant and the victim as they moved along the

4

parking lot. Mrs. Russell testified that she bent down to pick up the defendant's glasses when she heard a shot fired, but she did not see who fired the gun. On cross-examination, she testified that she did not see a weapon in the victim's hand. She also admitted that she told an officer that she did not see the victim punch the defendant a second time because she was retrieving the defendant's glasses, but she did see the victim cock his arm back as if preparing to punch the defendant. Mrs. Russell further testified that she does not drink.

The defendant acknowledged having some beers on the night in question. As for the confrontation, he testified that the victim released his hand after they set to arm wrestle because the defendant refused to bet on the contest. The defendant said that the victim then punched him for no reason. He said that he believes the victim used a weapon because of the force of the blow. He testified that he told the victim not to hit him again, but the victim punched him a second time. The defendant testified that his left eye had swollen shut as a result of the punches, leaving him only with vision from his weaker right eye. He testified that both Mr. Gilbert and Mr. Sims were moving toward him. The defendant further stated that because he feared for his safety and because the victim was getting ready to throw another punch, he drew his gun, cocked it, and fired without aiming at any particular person.

On cross-examination, the defendant stated that he did not see the victim obtain a weapon before the punches were thrown. He also testified that he did not believe he could escape from the victim because of the injury to his eye and face. He stated that when he left the scene to get medical attention, he was unaware that the victim had been wounded. The defendant also testified that his fear for the safety of his wife contributed to his actions. However, he admitted that no one made any threatening movements toward his wife.

5

Ray Stephens, the victim's uncle, testified as a rebuttal witness for the state. He said that the wounds on the victim's knuckles resulted from working on a truck belonging to Mr. Stephens' son.

_____

## SUFFICIENCY OF THE EVIDENCE

The defendant challenges his convictions on grounds that the evidence is insufficient to establish his guilt beyond a reasonable doubt. He argues that the proof showed that he acted in self-defense or in defense of another. We disagree. Although the defendant claimed that he was defending himself and his wife from the attack of the victim, the jury obviously did not accredit his version of the events.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all rational inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

When viewed in this light, the proof showed that the defendant pushed the victim, who responded by punching the defendant. The defendant then shot the victim and left the scene. The evidence shows that the victim did not produce a weapon and did not lead the defendant to believe that he possessed a weapon. And the victim and the victim's friends at no time made any threatening movements towards Mrs. Russell. Under these facts, we conclude that the jury was justified in finding beyond a reasonable doubt that the defendant committed a reckless homicide and did not act in self-defense or in defense of another.

6

The evidence was also sufficient to convict the defendant of possession of a firearm where alcoholic beverages are sold. The defendant admitted entering the bar with the gun on his person. The defendant's convictions are based upon sufficient evidence.

## SENTENCING

The defendant's next contention is that his sentences were excessive. He contests the length of his sentences, the denial of probation, and the consecutive nature of the sentences.

At the sentencing hearing, the defendant's wife testified that she was four and one-half months pregnant with a high risk pregnancy. She testified that she would have to leave work on medical leave two to three months before the birth of the baby and remain on medical leave eight weeks after the birth. She further stated that she did not believe that the family could live on her medical leave pay. She also testified that the defendant spent a great deal of time caring for his grandmother and her mentally retarded niece.

The defendant testified that he attended Alcoholics Anonymous meetings several times a week for the past four and one-half years, and that he had not had alcohol for a year previous to the night of the altercation. He also said that he had abstained ever since that night. The defendant admitted that he had previously used marijuana, but he had not used it in the past four years. The defendant further stated that his grandmother and her niece relied upon him for transportation and many household chores. He stated that he began carrying guns for his protection when he owned and operated a logging business because he carried large sums of money.

7

The presentence report shows that the defendant completed the ninth grade and has his G.E.D. It states that the defendant has had an alcohol abuse problem since the age of fifteen and that he occasionally used marijuana. The report reflects that the defendant completed an alcohol treatment program at the Greenleaf Center in Georgia. It also shows that the defendant has no prior convictions.

The trial court sentenced the defendant as a Range I, standard offender to four years incarceration for the reckless homicide and to eleven months and twenty-nine days for the possession of a firearm where alcoholic beverages are served. The trial court applied the following enhancement factors in T.C.A. § 40-35-114:

> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of an offense; and
>
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high.

It stated that the evidence supported a second degree murder. It found that the defendant's use of a weapon hazarded many people. It also found no mitigating factors to exist.

In denying probation, the court ruled that it was particularly concerned that the defendant always carried a concealed weapon and that the defendant went to the bar and consumed alcohol. It noted the great danger posed by mixing alcohol and weapons. It concluded that confinement was needed to avoid depreciating the seriousness of the offense and was particularly suited to provide an effective deterrent to others likely to commit similar offenses. See T.C.A. § 40-35-103(1)(B). As for consecutive sentences, the trial court found that the defendant's behavior on the night in question indicated no regard for human life and that the defendant had no hesitation in committing an offense when the risk to human life was high. See T.C.A. § 40-35-115(b)(4).

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct.  T.C.A. §§ 40-35-401(d) and -402(d).  As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper; therefore, if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found,  and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.  T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the

potential for rehabilitation or treatment.  T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986).

The sentence to be imposed by the trial court for a felony is presumptively the minimum in the range unless there are enhancement factors present.  T.C.A. § 40-35-210(c).[1]  Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors.  T.C.A. § 40-35-210(d) and (e).  The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

**A.**

Regarding the length of the sentences, the defendant contends that the trial court improperly applied enhancement and mitigating factors.  The state asserts that the factors were properly applied.

The trial court properly applied enhancement factor (9), the use of a firearm, explosive device or other deadly weapon during the commission of an offense, for reckless homicide.  "Reckless homicide is the reckless killing of another."  T.C.A. § 39-13-215(a) (Supp. 1996).  The use of a firearm is not an essential element of this crime.  Therefore, the trial court appropriately considered the use of a firearm during the homicide in enhancing the defendant's sentence for the reckless homicide conviction.

The trial court was also correct in enhancing the defendant's sentence for reckless homicide because "the defendant had no hesitation about committing a crime

_____

[1] For Class A felonies committed on or after July 1, 1995, the presumptive sentence is the midpoint of the range.  See T.C.A. § 40-35-210 (Supp. 1996).

10

when the risk to human life was high." T.C.A. § 40-35-114 (10). Though factor (10) is inherent in every homicide case relative to the victim, it may be considered when the defendant endangers the lives of people other than the victim. See State v. Johnson, 909 S.W.2d 461, 464 n.1 (Tenn. Crim. App. 1995). In this case, the defendant created a high risk to at least five other people who were present when the defendant shot the victim. Thus, the trial court correctly relied upon factor (10).

Regarding mitigation, the defendant argues that he was entitled to mitigation of his sentences because he acted under strong provocation. See T.C.A. § 40-35-113(2). Though the defendant contends that he acted under strong provocation, the record shows that the victim punched the defendant in response to being pushed by the defendant. The defendant admitted that he never saw the victim with a weapon. The record further shows that immediately after being punched, the defendant pulled out a gun and shot the victim. The jury found the defendant guilty of only a reckless homicide. We see little in the record to support further mitigation because of strong provocation. The trial court's rejection of this factor was justified.

The defendant also asserts that the trial court should have considered a second mitigating factor in that he "committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct." See T.C.A. § 40-35-114(11). In response, the state contends that the defendant's habit of illegally carrying a gun, this time into a bar where he consumed alcohol, reflects a sustained intent to violate the law. It also argues that the defendant's assertion of a lack of sustained intent to shoot a person is irrelevant. It cites no authority in support of this argument.

First, we conclude that the defendant's habit of carrying a concealed weapon reflects that a sustained intent to violate the law motivated his conduct relative

11

to the weapons offense. However, we do not agree that his conduct and motivation relative to the reckless homicide, for which he is being sentenced, is irrelevant. Instead, we believe that the central point for sentencing consideration under this factor is whether a "sustained intent to violate the law motivated his conduct" that culminated in the homicide. See, e.g., State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). In this respect, the record shows that the homicide arose from a rapidly arising set of circumstances that does not lend itself to a conclusion that a sustained intent existed relative to the homicide. Under the circumstances in this case, we believe that mitigating factor (11) applies.

However, we believe that the weight of this mitigating factor is offset by the defendant's history of illegally carrying a weapon, a history that justifies enhancement under T.C.A. § 40-35-114(1). Obviously, if the defendant had not acted in this case consistently with his history, the killing would not have occurred. Under the foregoing analysis, we conclude that a four-year sentence was warranted for the reckless homicide conviction.

Unlike felony sentencing, the law does not provide a presumptive minimum sentence for misdemeanor convictions. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The defendant does not specify what he views to be wrong with his misdemeanor sentence. Misdemeanor sentences are to be consistent with the purposes and principles of the 1989 Sentencing Act. T.C.A. § 40-35-302(b). In our review, we recognize the potential danger to all persons present that arises from the combination of firearms and alcohol, and we also acknowledge the particularly great harm that actually resulted from the defendant's conduct in this case. We conclude that the sentence of eleven months and twenty-nine days was proper as imposed by the trial court.

**B.**

Next, the defendant contends that the trial court erred in denying him probation because the evidence does not overcome the statutory presumption in favor of alternative sentencing. The state asserts that alternative sentencing was properly denied, relying principally upon the fact that the defendant carried a weapon while consuming intoxicants and used deadly force without hesitation.

The defendant was presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary because he was convicted of a Class D felony and sentenced as a Range I, standard offender. See T.C.A. § 40-35-102(6). In this respect, the "evidence to the contrary" may relate to the defendant's rehabilitative capabilities being outweighed by any of the following factors: (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, or (3) measures less restrictive than confinement have been frequently applied unsuccessfully to the defendant. See T.C.A. § 40-35-103(1); Ashby, 823 S.W.2d at 169; Fletcher, 805 S.W.2d at 787-88. Also, although "probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b), Sentencing Commission Comments; see Fletcher, 805 S.W.2d at 787.

The defendant relies heavily on Rodman Montgomery v. State, No. 03C01-9410-CR-00380, Sevier County (Tenn Crim. App. Aug. 18, 1995), to support alternative sentencing. In Montgomery, the defendant and the victim were romantically involved and had been living together for some time. The defendant was forty years old and had completed substantial college work. The defendant was paralyzed from the

13

neck down from an accident that occurred while working construction during high school. The defendant inadvertently removed his catheter from his abdomen. The defendant believed that he needed to drive to a storage bin to get a replacement catheter. The victim did not want the defendant to leave because he had been heavily drinking. The defendant fell out of his wheelchair looking for a catheter in a duffle bag. The victim pushed the defendant's wheelchair onto the front porch to prevent the defendant from leaving. There was a .32 caliber pistol on the floor under the bed where the defendant lay. The defendant began playing with the pistol as if it were a toy, cocking and uncocking it. The gun discharged and struck the victim in the forehead. The defendant immediately dragged himself to a telephone to call for medical assistance, but the victim never regained consciousness.

This case is unlike <u>Montgomery</u>. The defendant entered the establishment in possession of a deadly weapon and started drinking. Relative to the altercation, the defendant pushed the victim and called him a name. The victim responded to the defendant's initial aggression by punching the defendant in the face. The defendant then pulled a gun from his pocket and killed the victim, firing the weapon only three to six inches from the victim's chest. In fact, the record supports the trial court's determination that a greater degree of culpability than recklessness was proven at trial.

A court may deny probation solely from the circumstances of the crime itself, if the crime as committed was "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." <u>State v. Travis</u>, 622 S.W.2d 529, 534 (Tenn. 1981); <u>State v. Hartley</u>, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). Moreover, the voluntary combining of intoxication with dangerous instrumentalities has been recognized by our supreme court as a matter of serious public concern which may justify a denial of probation. <u>See</u> <u>State v. Cleavor</u>,

691 S.W.2d 541, 543 (Tenn. 1985). Under all of the circumstances, we conclude that the evidence in the record adequately supports the trial court's decision to deny probation.

## C.

Finally, the defendant contends that the trial court should not have ordered consecutive sentencing. The state asserts that the trial court properly imposed consecutive sentencing given the defendant's conduct on the night in question. We disagree.

At the sentencing hearing, the trial court ordered the defendant's sentences to be served consecutively because it found that the defendant's behavior that night met the definition of a dangerous offender under T.C.A. § 40-35-115(b)(4). However, this finding alone will not justify consecutive sentencing:

> [T]he imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

We conclude that the trial court should not have ordered consecutive sentencing. It made no findings regarding the need to protect the public against the defendant's future criminal conduct or the fact that consecutive sentencing would reasonably relate to the severity of the offenses committed. Also, our review of the record finds little to support such findings. Although the defendant admitted to carrying a weapon regularly, there is no other incident of violence shown. Further, there is no indication from the defendant's past history that would show him to be not amenable to rehabilitation. Likewise, there is no indication from the circumstances surrounding the

15

offenses that he is a continuing danger to society. Therefore, we conclude that the sentences should be served concurrently.

In consideration of the foregoing, the defendant's judgments of conviction are affirmed, but the sentences are modified to be served concurrently to each other.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
Gary R. Wade, Judge


_____
William M. Barker, Judge